UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MICHAEL GONSALVES, )<br>)<br>  Plaintiff )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>)<br>  Defendant ) | Civil No. 09-181-B-W |

REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the following issues: whether the administrative law judge should have considered whether the plaintiff's mental impairment met the criteria of a specific Listing; whether the administrative law judge's finding that there was other work in the national economy that the plaintiff could perform was supported by substantial evidence; and whether the residual functional capacity found by the administrative law judge was supported by substantial evidence. I recommend that the commissioner's decision be affirmed.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520 414.920; *Goodermote v. Secretary of Health & Human Servs.,* 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that, for purposes of SSD, the

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by the court pursuant to Local Rule 16.3(a)(2)A, which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on April 2, 2010, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

plaintiff last met the insured status requirements of the Social Security Act on June 20, 2003, Finding 1, Record at 20; that he suffered from the severe impairments of a mood disorder, an anxiety disorder, and, since March 30, 2006, a knee disorder, none of which, considered alone or in combination, met or medically equaled the criteria of any impairment listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), Findings 3 & 4, *id.* at 20 & 22; that prior to March 30, 2006, the plaintiff retained the residual functional capacity to lift and carry 50 pounds occasionally and 25 pounds frequently, stand or walk two hours at a time for a total of six hours in an eight-hour day, sit for two hours at a time for a total of six hours in an eight-hour day, push or pull 50 pounds occasionally and 25 pounds frequently, to understand, recall, and carry out instructions necessary to perform simple, unskilled work, to attend and concentrate for extended periods at a goal-oriented rate, to ordinarily be on schedule, to work with no more than 12 hours of psychological leave per month, to sustain an ordinary routine with occasional supervision and redirection, to complete work with no more than occasional redirection from supervisors, to make occasional simple work-related decisions and to respond appropriately to occasional changes in work setting, to work undistracted by occasional contact with one or two co-workers and occasional, incidental contact with the public, Finding 5, *id.* at 23; that, beginning on March 30, 2006, the plaintiff had the residual functional capacity to stand or walk for less than two hours in an eight-hour day and was required to alternate sitting and standing periodically, with no other changes in the residual functional capacity previously set forth, Finding 6, *id.* at 25; that he had been unable to perform his past relevant work since March 15, 2001, the alleged date of onset, Findings 2 & 7, *id.* at 20, 25; that, given his age (37 at the alleged date of onset, a younger individual) and limited education, without regard to transferability of job skills before March 30, 2006, the use of Appendix 2 to 20 C.F.R. Part 404, Subpart P (the "Grid") as a framework for

decision-making resulted in a finding that the plaintiff was not disabled, whether or not he had any transferable job skills, Findings 8-10, *id.* at 26; that, beginning on March 30, 2006, the plaintiff had not been able to transfer any job skills to other occupations, *id.*; that, prior to March 30, 2006, there was a significant number of jobs in the national economy that the plaintiff could have performed, Finding 11, *id.*; that, beginning on March 30, 2006, there was not a significant number of jobs in the national economy that the plaintiff could have performed, Finding 12, *id.* at 27; that the plaintiff was, therefore, not under a disability as that term is defined in the Social Security Act before March 30, 2006, but became disabled on that date and continued to be disabled through the date of the decision, Finding 13, *id.*, and that the plaintiff's substance use was not a contributing factor material to the determination of disability, Finding 15, *id.*  The Appeals Council declined to review the decision, *id.* at 7-9, making it the final decision of the commissioner.  20 C.F.R. §§ 404.981, 416.1281; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7.  The record must contain

positive evidence in support of the commissioner's findings regarding the plaintiff's residual work capacity to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff's appeal also implicates Step 3 of the sequential review process, at which stage a claimant bears the burden of proving that his impairment or combination of impairments meets or equals the Listings. 20 C.F.R. §§ 404.1520(d), 416.920(d); *Dudley v. Secretary of Health & Human Servs.*, 816 F.2d 792, 793 (1st Cir. 1987). To meet a listed impairment, the claimant's medical findings (*i.e.*, symptoms, signs, and laboratory findings) must match those described in the listing for that impairment. 20 C.F.R. §S 404.1525(a), 404.1528, 416.925(d), 416.928. To equal a listing, the claimant's medical findings must be "at least equal in severity and duration to the listed findings." 20 C.F.R. §§ 404.1526(A), 416.926(a). Determinations of equivalence must be based on medical evidence only and must be supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. §§ 404.1526(b), 416.926(b).

## Discussion

### 1. The Listing

The plaintiff contends that the administrative law judge committed reversible error when he failed to find that the plaintiff's mental impairments met Listing 12.04 at any relevant time. Plaintiff's Itemized Statement of Errors ("Itemized Statement") (Docket No. 11) at 11-14. That listing deals with affective disorders. It provides, in its entirety:

> 12.04 *Affective Disorders*: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

A. Medically documented persistence, either continuous or intermittent, of one of the following:
1. Depressive syndrome characterized by at least four of the following:
   a. Anhedonia or pervasive loss of interest in almost all activities; or
   b. Appetite disturbance with change in weight; or
   c. Sleep disturbance; or
   d. Psychomotor agitation or retardation; or
   e. Decreased energy; or
   f. Feelings of guilt or worthlessness; or
   g. Difficulty concentrating or thinking; or
   h. Thoughts of suicide; or
   i. Hallucinations, delusions, or paranoid thinking; or
2. Manic syndrome characterized by at least three of the following:
   a. Hyperactivity; or
   b. Pressure of speech; or
   c. Flight of ideas; or
   d. Inflated self-esteem; or
   e. Decreased need for sleep; or
   f. Easy distractability; or
   g. Involvement in activities that have a high probability of painful consequences which are not recognized; or
   h. Hallucinations, delusions, or paranoid thinking; or
3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);
AND
B. Resulting in at least two of the following:
1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration;
OR
C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
1. Repeated episodes of decompensation, each of extended duration; or
2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

Section 12.04, Appendix 1 to 20 C.F.R. Part 404, Subpart P. The plaintiff relies on subsection C(3) of the listing. Itemized Statement at 11-14.[2]

The plaintiff asserts that the administrative law judge "noted in his findings" at pages 20-21 of the record that the plaintiff "had an affective disorder of at least two years' duration." *Id*. at 12. At that point in his decision, the administrative law judge found that the plaintiff had suffered from the severe impairment of a mood disorder from the alleged date of onset through the date of the opinion, Record at 20, and he later refers to the plaintiff's "affective disorder," *id*. at 22, so it is apparent that he uses these terms interchangeably. The fact that he found the impairment to be severe means, by definition, that it caused more than a minimal limitation on his ability to do basic work activities. 20 C.F.R. §§ 404.1521(a) & (b), 416.921(a) & (b). The documents in the record cited by the plaintiff demonstrate psychosocial support during some of this period. *E.g.*, Record at 380-95 (REEP Adult Mental Health Services Psychosocial/Comprehensive Assessment 9/9/04 (annual update of services begun on 9/9/02)). The problem here for the plaintiff is that he admits that there is no medical documentation on this point after September 2004, Itemized Statement at 14, and the listing requires "current" attenuation of symptoms by psychosocial support. For purposes of SSI, therefore, it appears that Listing 12.04(C) has not been met.

For purposes of the plaintiff's SSD claim, he must show that the listing was met on or before June 30, 2003, the date last insured. Record at 20. There is record evidence of

---

[2] At oral argument, counsel for the plaintiff relied on subsection C(2) of the Listing, an argument not raised in the itemized statement of errors and therefore waived. *Hopkins v. Astrue*, No. 07-40-P-S, 2007 WL 3023493 (D. Me. Oct. 12, 2007), at *5 n.3 (and cases cited therein). In addition, as counsel for the commissioner pointed out, the current attorney for the plaintiff represented to the administrative law judge shortly before the hearing that "[Step 3] Listing Status" was "[n]ot applicable on this record." Record at 189.

psychosocial support before that date. Thus, the issue becomes whether there is medical evidence that not only meets the requirements of subsection C(3) on or before that date but is also undisputed, requiring the administrative law judge to find that the listing was met. If there is substantial evidence to support a conclusion that subsection C(3) was not met, or no evidence to support a conclusion that it was, there is no error requiring remand for purposes of the SSD claim.

The plaintiff apparently contends that, because he received outpatient services from REEP before the date last insured, he "has demonstrated that he has an 'inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.'" Itemized Statement at 13. But, if weekly psychological counseling and assistance in filling out forms and obtaining social services, *id.*, while living independently, Record at 470-510, established an inability to function outside a highly supportive living arrangement, there would be a dramatic increase in the number of individuals who might qualify for Social Security benefits. To the contrary, a "highly supportive living arrangement" is something other than living with one's parents while taking care of most of one's personal needs and making substantial contributions to the household without a high degree of supervision, *McIntosh v. Barnhart*, 172 Fed.Appx. 592, 593, 2006 WL 775142 (5th Cir. 2006), at \*\*1; it refers to shelters or group homes, inpatient psychiatric treatment, or an inability to live on one's own, *Schnettler v. Astrue*, Civil Action No. 08-5811, 2010 WL 391424 (E.D.Pa. Jan. 25, 2010), at \*11.

The only medical evidence I was able to locate is directly contrary to a need for placement of the plaintiff in a highly supportive living arrangement before June 30, 2003. A psychiatric review technique form completed by a state-agency non-examining psychological

reviewer on October 16, 2002, specifically states that the evidence did not establish the presence of the C criteria with respect to Listing 12.04. Record at 245.

Even if the administrative law judge should have discussed the C criteria of Listing 12.04 in this case, any failure to do so was harmless, as there is no evidence that would have allowed him to conclude that those criteria had been met.

### 2. *Other Work in the National Economy*

The plaintiff next contends that the administrative law judge's hypothetical question to the vocational expert constituted reversible error because it "failed to fully account for the opinions of Dr. Gallon as well as the State agency medical consultants." Itemized Statement at 16. Specifically, the question did not include "Dr. Gallon's finding that [the plaintiff] is markedly limited in his ability to demonstrate reliability[,]" and Dr. Lester's opinion that the plaintiff was "markedly limited in his ability to interact appropriately with the general public as well as [i]n his ability to understand, remember, and carry out detailed instructions." *Id*. at 16-17 (emphasis omitted).

Dr. Gallon is a psychologist who examined the plaintiff at the request of the Maine Disability Determination Services on September 13, 2006. Record at 741. There is no indication in his report that his findings have any retrospective application. At issue in this appeal, for purposes of SSD, is the period before June 20, 2003, and, for purposes of SSI, the period before March 30, 2006. Thus, any error in failing to include in the hypothetical question Dr. Gallon's limitation with respect to reliability, which, upon close examination of his report, does not appear to be related to his psychological diagnosis of the plaintiff in any event, *id*. at 744, was harmless. The same is true, with respect to SSD, of the psychiatric review technique form filled

8

out by Lewis F. Lester, a non-examining state-agency psychologist reviewer, on January 10, 2005. *Id*. at 631-49.

Dr. Lester did note a marked limitation in the plaintiff's ability to interact appropriately with the general public. *Id*. at 647. The administrative law judge's hypothetical question to the first vocational expert[3] asked him to assume that the plaintiff "can interact occasionally incidentally with the public." *Id*. at 813. The latter limitation was included in the residual functional capacity assigned to the plaintiff by the administrative law judge's opinion, which assigns "[g]reat . . . weight" to the opinions of three state-agency psychologist-reviewers, including Dr. Lester. *Id*. at 25. Of the other two reviewers, Dr. Houston found in his October 16, 2002, opinion that the plaintiff's ability to interact appropriately with the general public was not significantly limited at that time, *id*. at 249, and Dr. Gallon's opinion that the plaintiff had moderate difficulty in dealing with the public as of September 13, 2006, *id*. at 745, is inapplicable to the period before March 30, 2006. If Dr. Lester's opinion necessarily contradicts the standard used by the administrative law judge in his findings and his hypothetical question, the administrative law judge should have explained why he chose to rely on Dr. Houston's findings, or some point between the two reports.

Any such error is harmless in this case, however. As the plaintiff himself notes, the vocational expert was asked whether any of the jobs she identified as being available to the plaintiff in response to the administrative law judge's hypothetical question would still be available to him if he suffered from a marked limitation in the ability to interact appropriately with the general public, and the vocational expert testified that only two of the five jobs she had

---

[3] At the first portion of the hearing, on August 1, 2006, Peter Mazzaro testified as a vocational expert. Record at 750-751. At a continuation of that hearing, on December 5, 2006, Jane Garish testified as a vocational expert. *Id*. at 836. The pronouns used in the text reflect this change.

9

identified, including the cleaner II position, would be eliminated. Itemized Statement at 17, Record at 859-60, 865.

The plaintiff next turns to the vocational expert's testimony on cross-examination to the effect that, if the hypothetical question were modified to limit the plaintiff to jobs with a "GED reasoning level one," all of the identified jobs except the cleaner II position, DOT number 323.687-014, would be eliminated. Record at 855-56, 862. The plaintiff argues that he is limited to simple and repetitive tasks, which corresponds to a General Educational Development reasoning level of one in the Dictionary of Occupational Titles, so that this testimony must be accepted. Itemized Statement at 18-19. Because the cleaner job has been eliminated by the limitation on public interaction, he asserts, there is no evidence that any jobs were available to him before March 30, 2006.[4]

The administrative law judge did find in this case that the plaintiff was "able to understand, recall, and carry out instructions necessary to perform simple, unskilled work." Record at 25. It is true that this court has held that a limitation to jobs involving "simple instructions" precludes jobs entailing a GED reasoning level above one. *See, e.g., Flagg v. Barnhart*, No. 04-45-B-W, 2004 WL 2677208 (D. Me. Nov. 24, 2004), at *5. However, the administrative law judge in this case specifically told the vocational expert that his use of the term "simple . . . work," as opposed to "simple instructions," was "synonymous with S[pecific] V[ocational] P[reparation] 2 level work" rather than any particular reasoning level. Record at 861. This distinction is appropriate. 20 C.F.R. §§ 404.1568(a) & 416.968(a); *see, e.g., Durbin v. Astrue*, No. 09-3095, 2010 WL 271527 (C.D. Ill. Jan. 15, 2010) at *8; *Cross v. Astrue*, No. 08-CV-0425 (VEB), 2009 WL 3790177 (N.D.N.Y. Nov. 12, 209), at *8; *Cottrill v. Astrue*, No. 1:08cv0159 BAK (DLB), 2009 WL 3380314 (E.D. Cal. Oct. 16, 2009), at *8. With this explicit

---

[4] The vocational expert was not asked to limit her testimony to any particular period of time.

clarification, the cleaner job would remain available. *Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed. 1991), § 323.687-014 (SVP 2, reasoning level 1). Accordingly, no basis for remand has been shown in this regard.

### 3. Residual Functional Capacity

The plaintiff's final argument is that "there is no medical evidence from any physicians . . . which supports the ALJ's finding that Mr. Gonsalves could have performed the exertional demands of light or medium work" before March 30, 2006. Itemized Statement at 19 (emphasis omitted). He asserts that the assigned physical capacity "is not even supported by the opinion of the State agency medical expert, who last reviewed the evidence on October 16, 2002, but found no physical limitations." *Id*. He contends, without citation to authority, that "an ALJ is precluded from making [an RFC] assessment without some expert medical testimony or other medical evidence to support his decision." *Id*. at 20.

But, he merely asserts in conclusory fashion that, after October 16, 2002, "substantial additional medical evidence was added to the record pertaining to Mr. Gonsalves' physical impairments that was not reviewed by any State agency medical consultant." *Id*. at 19-20. He never identifies any such evidence. At the point in the sequential evaluation process at which an applicant's residual functional capacity is determined, the burden of proof remains with the applicant. If the applicant has not submitted any medical evidence to support a more restricted residual functional capacity than that assigned by the administrative law judge, he or she is not entitled to a remand merely because the administrative law judge made a determination on the basis of what evidence *was* available to him or her.

It is true that the administrative law judge's opinion does not provide any analysis of medical evidence to support a limitation to light work prior to March 30, 2006, Record at 26, but

that error can only be read, given the state of the record, to be favorable to the plaintiff, assigning him a more restricted residual physical capacity than, as the plaintiff himself points out, is justified by the medical evidence. *See, e.g., MacFarlane v. Astrue*, No. 07-132-P-H, 2008 WL 660225 (D. Me. Mar. 5, 2008), at *4 (such an error harmless when finding more favorable to plaintiff than would have been justified by evidence); *Moore v. Barnhart*, No. 04-200-P-C, 2005 WL 1231497 (D. Me. Nov. 24, 2005), at *2 (plaintiff not entitled to remand on basis of finding more favorable than evidence appears to support). I have already discussed why at least one of the jobs identified by the vocational expert in response to the administrative law judge's hypothetical question based on a light exertional capacity remains viable. That is sufficient under the circumstances of this case. *See, e.g., Gray v. Barnhart*, No. 04-207-B-W, 2005 WL 1923523 (D. Me. Aug. 9, 2005), at *8; *Doucette v. Barnhart*, No. 04-89-P-S, 2004 WL 2862174 (D. Me. Dec. 13, 2004), at *6.

## Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 10th day of May, 2010.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge